UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

| | | |
|---|---|---|
| LEON COUNTY, FLORIDA and the LEON COUNTY ENERGY IMPROVEMENT DISTRICT, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No.: 4:10CV436-RH/WCS |
| FEDERAL HOUSING FINANCE AGENCY; EDWARD DeMARCO, in his capacity as Acting Director of FEDERAL HOUSING FINANCE AGENCY; FEDERAL HOME LOAN MORTGAGE CORPORATION; CHARLES E. HALDEMAN, JR., in his capacity as Chief Executive Officer of FEDERAL HOME LOAN MORTGAGE CORPORATION; FEDERAL NATIONAL MORTGAGE ASSOCIATION; and MICHAEL J. WILLIAMS, in his capacity as Chief Executive Officer of FEDERAL NATIONAL MORTGAGE ASSOCIATION, | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

**PLAINTIFFS' MEMORANDUM IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................ 1

STATEMENT OF FACTS ................................................................................ 3

ARGUMENT .................................................................................................. 5

I.     STANDARD OF REVIEW ...................................................................... 5

II.    THE COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS ..... 6

       A.    Section 4617(f) Does Not Apply Because FHFA
             Was Not Acting as the Enterprises' Conservator
             When It Issued the Statement ............................................................ 6

       B.    Plaintiffs' Claims are not Barred by 12 U.S.C. §4635(b)
             Because The Statement is Not a Notice or Order ............................ 9

       C.    Section 4623(d) Does Not Affect The Court's Jurisdiction
             Over Plaintiffs' Claims .................................................................... 11

III.   PLAINTIFFS' APA CLAIMS ARE VALID AS A
      MATTER OF LAW ............................................................................... 12

       A.    Plaintiffs Have Standing to Pursue Their APA Claims ................. 13

       B.    FHFA's Statement is Final Agency Action .................................... 15

       C.    The Statement is a Rule .................................................................. 16

       D.    Plaintiffs' Have Suffered a Legal Wrong as a Result of
             FHFA's Arbitrary and Capricious Statement ................................. 19

IV.   PLAINTIFFS' TENTH AMENDMENT CLAIM IS PROPER ............... 20

V.    PLAINTIFFS' UNFAIR TRADE PRACTICE CLAIM IS PROPER ....... 21

VI.   CONCLUSION .................................................................................... 24

VII.  Certificate of Service ........................................................................... 25

# TABLE OF AUTHORITIES

**Cases**

*281-300 Joint Venture v. Oniom*
    938 F.2d 35, 39 (5th Cir. 1991) ..................................................................................9

*Bennett v. Spear*
    520 U.S. 154, 177-178 (1997) ...................................................................................15

*Betts v. Advance Am.*
    213 F.R.D. 466, 482 (M.D. Fla. 2003) ......................................................................23

*Bowen v. Michigan Academy of Family Physicians*
    476 U.S. 667, 670 (1986) ............................................................................................6

*Bursik v. One Fourth Street North, Ltd.*
    84 F.3d 1395, 1397 (11th Cir. 1996) ..........................................................................7

*Butero v. Royal Maccabees Life Ins. Co.*
    174 F.3d 1207, 1212 (11th Cir. 1999) .......................................................................21

*Citizens to Save Spencer County v. EPA*
    600 F.2d 844, 876 n. 153 (D.D.C. 1979) ...................................................................17

*Clarke v. Securities Indus. Ass'n*
    479 U.S. 388, 399-400 (1987) ...................................................................................13

*Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*
    643 So. 2d 22, 24 (Fla. 4th DCA 1994) .....................................................................23

*Farmer v. Hawk*
    1996 WL 525321 (D.C. Cir. 1996) ............................................................................19

*Interport Pilots Agency, Inc. v. Sammis*
    14 F.3d 122 .................................................................................................................17

*Investment Company Institute v. Camp*
    401 U.S. 617 (1971) ...................................................................................................13

*Lawrence v. Dunbar*
    919 F.2d 1525, 1528-29 (11th Cir. 1990) ....................................................................5

*Marshall County Board of Education v. Marshall County Gas District*
    992 F.2d 1171, 1174 (11th Cir. 1993) .........................................................................6

*Pacific Gas & Electric v. State Energy Resources Conservation of Development*
   *Commission*, 461 U.S. 190, 216 (1983).............................................................................22

*Pennsylvania R. Co. v. Dillon*
   335 F. 2d 292, 294 (D.C. Cir. 1964)................................................................................19

*Perry v. Delaney*
   74 F. Supp. 2d 824, 834 (C.D. Ill. 1999) .......................................................................19

*Reno v. Condon*
   528 U.S. 141, 150 (2000) ...............................................................................................21

*Sierra Club, Lone Star Chapter v. Fed. Deposit Insurance Corp.*
   992 F.2d 545, 548-49 (5th Cir. 1993)...............................................................................7

*Sinaltrainal v. Coca-Cola Co.*
   578 F.3d 1252, 1260 (11th Cir. 2009) ..............................................................................6

*United States v. Gaubert*
   499 U.S. 315 (1991) .......................................................................................................18

*United States v. McAllister*
   969 F. Supp. 1200, 1212 (D. Minn. 1997).....................................................................19

*Warshauer v. Solis*
   577 F.3d 1330, 1337 (11th Cir. 2009) ...........................................................................17

**Regulations**

76 Fed. Reg. 26, 6702 ...........................................................................................................5

**Rules**

Federal Rules of Civil Procedure 12(b)(1) ............................................................................3

Federal Rules of Civil Procedure 12(b)(6) ............................................................................3

**Statutes**

5 U.S.C. § 554(e) ..............................................................................................................9, 10

5 U.S.C. § 702 .....................................................................................................................19

12 U.S.C. § 1821(j)................................................................................................................7

12 U.S.C. § 4511(b)..............................................................................................................16

12 U.S.C. § 4513(a)(1)(B) ......................................................................7, 13

12 U.S.C. § 4513(a)(1)(B)(v) ......................................................................14

12 U.S.C. § 4526(b) ....................................................................14, 17, 19

12 U.S.C. § 4616 ......................................................................................12

12 U.S.C. § 4617(b)(2)(D) ............................................................................9

12 U.S.C. § 4617(f) ..................................................................................6, 7

12 U.S.C. § 4623(b) ....................................................................................6

12 U.S.C. § 4635(b) ..................................................................................6, 9

## **Other Authority**

32 Charles Alan Wright & Arthur R. Miller,
*Federal Practice and Procedure* § 8205 (1st ed. 2011) ....................................................10

Plaintiffs, Leon County, Florida ("the County") and the Leon County Energy Improvement District ("LEID"), submit this Memorandum of Law in Opposition to the Motion to Dismiss filed by Defendants, the Federal Housing Finance Administration ("FHFA"), Edward DeMarco, and the Federal Home Loan Mortgage Corporation ("Freddie Mac") and Federal National Mortgage Association ("Fannie Mae") (collectively the "Enterprises").

## INTRODUCTION

This action concerns statements Defendants made, and actions they took, that directly affect the County and LEID's ability to implement the Leon County Energy Assistance Program ("LEAP"), a Property Assessed Clean Energy ("PACE") program that is consistent with state and federal law.  LEAP, like other PACE programs, is designed to provide financing for clean energy projects on individual homes or businesses.  The financing is repaid through local government property assessments. LEAP is one of over twenty PACE programs that have been developed nationwide to promote energy conservation and to enable communities to reach their greenhouse gas reduction goals.

On May 5, 2010, the Enterprises issued advice letters to lenders declaring that PACE assessments that acquire a priority lien over existing mortgages are alterations to traditional lending practices and therefore pose risk to lenders, servicers, and mortgage securities investors.  In the letters, the Enterprises erroneously characterize the PACE assessments as loans rather than assessments and make unsubstantiated findings that

PACE programs "pose unusual and difficult risk management challenges" and "do not have the traditional community benefits associated with taxing initiatives."

Subsequently, on July 6, 2010, FHFA issued a statement titled "FHFA Statement on Certain Energy Retrofit Loan Programs" (the "Statement") confirming the earlier advice letters issued by the Enterprises and directing them, along with the Federal Home Loan Banks, to undertake several so called "prudential actions" preventing the Enterprises from acquiring mortgages or refinancing properties encumbered by PACE assessments that have first lien priority.  These actions are the focus of this lawsuit.

The Statement is a rule and an exercise of FHFA's regulatory authority over the Enterprises and the Federal Home Loan Banks, but it was not adopted as a rule or made subject to the notice-and-comment rulemaking procedures of the Administrative Procedure Act ("APA").  FHFA exceeded its statutory authority when it issued the Statement, and it is arbitrary and capricious.  The Statement encroaches on Plaintiffs' sovereignty in violation of the Tenth Amendment of the U.S. Constitution and violates the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA").

In their motion to dismiss, Defendants argue that the Housing and Economic Recovery Act ("HERA") withdraws the Court's jurisdiction over this matter, and that Plaintiffs have failed to state a claim for relief under the APA, the Tenth Amendment, and FDUTPA.  Taking the well pleaded factual allegations in the Complaint as true and viewing the Complaint in a light most favorable to Plaintiffs, Defendants' motion to dismiss must be denied.

## STATEMENT OF FACTS

PACE programs function through the use by local governments of their long-held assessment powers to provide financing to property owners to fund energy efficiency improvements. Complaint, ¶ 21.  The assessments attach to the improved property as a lien until repaid. *Id.*

On February 7, 2009, the American Recovery and Reinvestment Act ("ARRA") was signed into law and allocated 16.8 million dollars to the United States Department of Energy ("DOE") for Energy Efficiency and Conservation Block Grants, the Weatherization Assistance Program, and the State Energy Program. *Id.* at ¶ 32.  DOE has encouraged development of PACE programs nationally, and has used its allocation of ARRA funds to assist local and state governments in doing so. *Id.*

Florida has expressly authorized local governments and special districts to create and administer PACE programs through House Bill 7179, passed in the 2010 legislative session. *Id.*  The Florida Legislature found that "there is a compelling state interest in enabling property owners to voluntarily finance such improvements with local government assistance." *Id.* at ¶ 22.  Pursuant to House Bill 7179, PACE assessments constitute a lien of equal dignity to county taxes and assessments, which have enjoyed senior lien status for decades under Florida law. *Id.* at ¶ 28.  Notwithstanding these specific legislative findings, Defendants have asserted that PACE assessments are unlike other  tax assessments, such as water system upgrades, and do not have the traditional community benefits associated with taxing initiatives. Id. at ¶ 50.  These assertions are legally and factually unsupported.

LEAP is a PACE program and has goals of promoting meaningful energy reduction efforts, generating net economic benefit to participants, and providing tax-exempt equity in the participant's property. *Id.* at ¶ 34.  The goals include creating jobs and additional disposable income for working class families, and reducing greenhouse gas emissions. *Id.* at ¶ 34.  LEAP includes specific eligibility criteria for property owners' participation. *Id.* at ¶ 35.  For example, the applicant must own the property, and property taxes and federal income taxes must be current; the applicant must be current on the mortgage; there must be no involuntary liens encumbering the property; and the proposed improvements must be reasonable. *Id.*  LEAP has capped financing at $7,000.00. *Id.* at ¶ 40.

On May 5, 2010, after LEAP was formed, Freddie Mac issued its "Industry Letter" to Sellers/Servicers, stating that "an energy-related lien may not be senior to any Mortgage delivered to Freddie Mac." *Id.* at ¶ 48.  At the same time, Fannie Mae issued a "Lender Letter" stating: "PACE loans generally have automatic first lien priority over previously recorded mortgages." *Id.*  The improper categorization of PACE assessments as "loans" provides a path for FHFA to prohibit them because the terms of the Enterprises' Uniform Security Instruments prohibit *loans*, not *liens*, which have senior status to a mortgage. *Id.*

On July 6, 2010, FHFA issued the Statement, which included the unsupported assertions that PACE loans are "unlike routine tax assessments and pose unusual and difficult risk management challenges" and that they "do not have the traditional community benefits associated with taxing initiatives." *Id.* at ¶ 50.  The Statement also

4

affirmed the Enterprises' May 2010 letters, but directed Fannie Mae, Freddie Mac, and the Federal Home Loan Banks to waive any prohibitions for PACE assessments originating prior to July 6, 2010. *Id.* at ¶ 52. Following issuance of the Statement, the Enterprises issued their own directives on August 31, 2010, effectively implementing the Statement. *Id.*

Although LEAP received 100 applications within the first 24 hours after it opened (*Id.* at ¶ 42), Defendants' Statements have halted LEAP because more than half of the LEAP applicants have mortgages with Fannie Mae or Freddie Mac and, thus, are effectively prohibited from participating in LEAP. *Id.*

## ARGUMENT

### I.    STANDARD OF REVIEW

Defendants have moved to dismiss the County and LEID's Complaint for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure, and for failing to state a claim upon which relief may be granted pursuant to Rule 12(b)(6).

A motion to dismiss pursuant to Rule 12(b)(1) may assert either a factual or a facial attack to jurisdiction. *Lawrence v. Dunbar,* 919 F.2d 1525, 1528-29 (11th Cir. 1990).  A factual attack challenges "the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Id.* at 1529.  In a facial attack, on the other hand, the court determines whether the complaint has sufficiently alleged subject matter jurisdiction. The court must construe the complaint in the light most favorable to the plaintiff and

accept all well-pled facts alleged in the complaint as true. *Sinaltrainal v. Coca-Cola Co.*, 578 F.3d 1252, 1260 (11th Cir. 2009). Here, Defendants bring a facial attack on the Court's jurisdiction.

On a motion to dismiss pursuant to Rule 12(b)(6), the factual allegations in the complaint *must be taken as true*, and dismissal is appropriate only where it is clear that the plaintiff cannot prove a set of facts in support of the claims in the complaint. *Marshall County Board of Education v. Marshall County Gas District*, 992 F.2d 1171, 1174 (11th Cir. 1993). The court may dismiss a complaint pursuant to Rule 12(b)(6) only when, on the basis of a dispositive issue of law, no construction of the factual allegations will support the cause of action. *Id.*

## II.     THE COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS

Defendants argue that the Court lacks jurisdiction over Plaintiffs' claims pursuant to three provisions of HERA: 12 U.S.C. § 4617(f), 12 U.S.C. § 4635(b), and 12 U.S.C. § 4623(b). Defendants stretch the bounds of HERA to assert that the Court cannot review FHFA's actions. As discussed below, these provisions do not apply to Plaintiffs' claims.

### A.     Section 4617(f) Does Not Apply Because FHFA Was Not Acting as the Enterprises' Conservator When it Issued the Statement.

There is a strong presumption in favor of judicial review of federal administrative actions, and prohibitions against judicial review are narrowly construed. *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667, 670 (1986). Where doubt about congressional intent exits, the presumption in favor of judicial review of administrative action controls. *Id.* at 681.

6

FHFA argues that Plaintiffs' claims are barred by 12 U.S.C. § 4617(f), which provides that "no court may take any action to restrain or affect the exercise of powers or functions of [FHFA] as a conservator or receiver." However, when FHFA issued the Statement, it was not acting as the Enterprises' conservator or receiver, but rather as the Enterprises' regulator.

Section 4617(f), by its express terms, applies only when FHFA is acting as the Enterprises' conservator. *See Bursik v. One Fourth Street North, Ltd.*, 84 F.3d 1395, 1397 (11th Cir. 1996) (interpreting 12 U.S.C. § 1821(j), which is similar to 12 U.S.C. § 4617(f) and applies to the FDIC when acting as conservator); *Sierra Club, Lone Star Chapter v. Fed. Deposit Insurance Corp.*, 992 F.2d 545, 548-49 (5th Cir. 1993) (holding that 1821(j)'s anti-injunction bar did not apply when the FDIC was acting in its corporate capacity rather than as conservator). Accordingly, this Court has jurisdiction if FHFA was acting as the Enterprises' regulator, as opposed to conservator, when it issued the Statement.[1]

FHFA's regulatory duties include, among other things, ensuring that the Enterprises operate in a safe and sound manner, that their operations foster liquid, efficient, competitive, and resilient national housing finance markets, and that they comply with the rules, regulations, guidelines, and orders issued by FHFA. 12 U.S.C. § 4513(a)(1)(B). According to Defendants' own arguments, restricting the types of mortgages the Enterprises may deal with falls squarely within FHFA's regulatory duties, because doing so allegedly would ensure that the Enterprises are operating in a safe and

---

[1] Determining whether FHFA was acting as conservator or regulator at the time it issued the Statement involves a factual determination that should not be decided on a motion to dismiss.

sound manner and that their operations foster a liquid and stable housing finance market. *See* Private Transfer Fees, 76 Fed. Reg. 26, 6702 (February 8, 2011) (proposing a rule that would restrict the Enterprises from dealing in mortgages on properties encumbered by private transfer fee covenants).

Also, the content of the Statement shows that FHFA was not acting as the Enterprises' conservator when it issued the Statement. Rather, FHFA was serving in its regulatory function under HERA. The Statement was not only directed at Fannie Mae and Freddie Mac, but also the Federal Home Loan Banks. FHFA is the regulator for Fannie Mae, Freddie Mac, and the 12 Federal Home Loan Banks, but it was not appointed conservator for the 12 Federal Home Loan Banks. Therefore, it could only act in a regulatory capacity with regard to the Federal Home Loan Banks. In fact, FHFA refers to all three entities as the "regulated entities" in the second to last paragraph of the Statement. Also, the following text is found at the end of the Statement:

> The Federal Housing Finance Agency *regulates* Fannie Mae, Freddie Mac and the 12 Federal Home Loan Banks. These government-sponsored enterprises provide more than $5.9 trillion in funding for the U.S. mortgage markets and financial institutions.

(Emphasis added). Further, the Statement purports to address "significant safety and soundness concerns" and potential disruptions to "a fragile housing finance market," invoking the express regulatory duties listed above.

By contrast, FHFA's role as the Enterprises' conservator is to "preserve and conserve the assets and property" of the Enterprises. 12 U.S.C. § 4617(b)(2)(D). The Statement is not intended to "preserve and conserve" the Enterprises' existing assets and property, but is intended to restrict the types of assets and property (mortgages) that the

Enterprises may acquire in the future, but do not yet hold.  FHFA's statement expressly directs the Enterprises to "waive their Uniform Security Instrument prohibitions" for "any homeowner who obtained a PACE or PACE-like loan with a priority first lien prior to" the Statement, foregoing any "preserve and conserve" actions with regard to existing mortgages with PACE assessments.  The Statement is consistent with FHFA's regulatory role, not its role as conservator.

Finally, FHFA argues that the policy rationale behind the jurisdictional bar of Section 4617(f) supports its application in the instant case.   FHFA states that the jurisdictional bar was enacted so that conservators and receivers could "act in a quick and decisive manner in reorganizing, operating, or dissolving" troubled financial institutions, citing *281-300 Joint Venture v. Onion,* 938 F.2d 35, 39 (5th Cir. 1991).  However, FHFA cannot claim that it acted, or needed to act, in a quick and decisive manner since FHFA reviewed PACE programs for over a year before it issued the Statement.

FHFA was acting in its role as regulator, not conservator, when it issued the Statement.  As such, Section 4617(f) does not apply, and this Court has jurisdiction over Plaintiffs' claims.

**B.    Plaintiffs' Claims are not Barred by 12 U.S.C. § 4635(b) Because the Statement is Not a Notice or Order.**

12 U.S.C. Section 4635(b) provides:

Except as otherwise provided in this subchapter and section 4619 and 4623 of this title, *no court shall have jurisdiction to affect, by injunction or otherwise, the issuance or enforcement of any notice or order* under section 4631, 4632, 4513b, 4636 or 4637 of this title, or subchapter II of this chapter, or to review, modify, suspend, terminate, or set aside any such notice or order.

(Emphasis added).  First, FHFA argues that Section 4635(b) is triggered here because the Statement is a declaratory order issued, pursuant to 5 U.S.C. § 554(e), to terminate the brewing controversy over whether PACE programs present significant safety and soundness concerns and to remove the uncertainty as to whether FHFA would direct the Enterprises to take any prudential actions regarding PACE programs.

Section 554(e) provides that an "agency, with like effect as in the case of other orders, and in its sound discretion, may issue a declaratory order to terminate a controversy or remove uncertainty." *Id.*  Declaratory orders are like declaratory judgments, they "develop predictability in the law by authorizing binding determinations 'which dispose of legal controversies without the necessity of any party's action at his peril upon his own views.'" 32 Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 8205 (1st ed. 2011).  A declaratory order is a form of agency advice to an individual that is questioning whether a proposed action will run afoul of that agency's regulations.

The Statement is not a declaratory order because it does not terminate a controversy between Plaintiffs and FHFA.  The Statement directs the regulated entities to take certain prudential actions, it does not resolve a controversy brewing between the regulated entities and Plaintiffs, or anyone else.  Moreover, the Statement does not purport to be a declaratory order issued pursuant to 5 U.S.C. § 554(e).

Also, FHFA argues that even if the Statement is not an order, it is reasonably foreseeable that FHFA may re-issue the Statement in order form.  Therefore, according to FHFA, Section 4635(b) applies because an order by the Court granting Plaintiffs'

requested relief would affect the issuance of a future, but not yet issued, order. Again, Section 4635(b) applies only when an order or notice is issued or is going to be issued. The Statement is not an order or notice and there is no indication that FHFA will be converting the Statement into an order or notice. Had Congress intended the jurisdictional bar of Section 4635(b) to cut as broadly as FHFA urges, then Congress would have written it accordingly. Nothing in Section 4635(b) allows for its application to situations where at some point in the undefined future FHFA may convert a guidance statement into an order.

FHFA attempts to further stretch the reach of Section 4635(b) by arguing that, because the Statement's provisions conform to Section 4624(b) and (c), it does not matter that the Statement is not an order and the jurisdictional bar applies anyway. Sections 4624(b) and (c) provide that FHFA may, by order, make temporary adjustments to the established standards for the Enterprises or order the Enterprises to dispose of or acquire any asset. But as previously discussed, the Statement is not an order and does not conform to Sections 4624(b) and (c). Additionally, nowhere in the Statement does it indicate that it was issued pursuant Sections 4624(b) or (c), nor does it order the Enterprises to acquire or dispose of any asset or adjust the Enterprises' established standards. The Statement is not an order, and Sections 4624(b) and (c) do not apply.

### C. Section 4623(d) Does Not Affect the Court's Jurisdiction Over Plaintiffs' Claims.

Finally, FHFA argues that the Court's jurisdiction also is barred by 12 U.S.C. Section 4623(d). Section 4623(d) provides:

> Except as provided in this section, no court shall have jurisdiction to affect, by injunction or otherwise, the issuance or effectiveness of any classification or action of the Director under this subchapter (other than appointment of a conservator under section 4616 or 4617 of this title or action under section 4619 of this title) or to review, modify, suspend, terminate, or set aside such classification or action.

FHFA suggests that Section 4623(d) "extends the reach of the jurisdictional bar beyond notices and orders" to "any … action of the Director" under any of the listed sections, particularly Section 4616. Motion, p. 17.   In another "if not this, then maybe that" argument, FHFA suggests that maybe the Statement was issued under Section 4616.

Section 4616 concerns supervisory actions applicable to significantly undercapitalized enterprises.   Section 4616(a) requires significantly undercapitalized enterprises to submit a capital restoration plan for approval to FHFA's director and then to seek FHFA approval before making any capital distribution that would result in the enterprise being classified as undercapitalized. *Id.* § 4616(a).   Section 4616(b)(4) allows FHFA's director, in addition to the requirements outlined in Section 4616(a), to "[r]equire the regulated entity to terminate, reduce, or modify any activity that the Director determines creates excessive risk to the regulated entity." *Id.* § 4616(b)(4).

Nothing in the Statement indicates that it was issued pursuant to 12 U.S.C. § 4616 or within the constraints outlined above.   Moreover, the Statement also was directed at the Federal Home Loan Banks, which have not been deemed to be significantly undercapitalized.   Section 4623(d) does not affect the Court's jurisdiction over Plaintiffs' claims.

## III.   PLAINTIFFS' APA CLAIMS ARE VALID AS A MATTER OF LAW

FHFA argues that Plaintiffs do not have prudential standing to bring their claims, that FHFA has not taken final agency action, that the Statement is not a rule, and that Plaintiffs' claim that FHFA's action was arbitrary and capricious fails as a matter of law. For the reasons set forth below, those arguments are without merit.

### A.    Plaintiffs Have Standing to Pursue Their APA Claims

FHFA argues that Plaintiffs' claims are not within the zone of interests HERA was enacted to protect.  To the contrary, Plaintiffs' interests fall squarely within the zone of interests protected by HERA.  Despite FHFA's attempt to characterize the zone of interests test as a narrow and restrictive inquiry, the Supreme Court has held that the "test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." *Clarke v. Securities Indus. Ass'n*, 479 U.S. 388, 399-400 (1987) (citing *Investment Company Institute v. Camp,* 401 U.S. 617 (1971)).  Under the zone of interest test, a plaintiff lacks standing only "if the plaintiff's interests are so marginally related to or inconsistent with the purposes implicit in the statute that it cannot reasonably be assumed that Congress intended to permit the suit." *Id*. at 399.

The purpose of HERA is to ensure that the regulated entities operate in a safe and sound manner, that their activities foster liquid, efficient, competitive, and resilient national housing finance markets, that they comply with HERA's provisions and associated rules, regulations, and guidelines, and that they are operated consistent with the public interest. 12 U.S.C. § 4513(a)(1)(B).  Plaintiffs have alleged an interest in

seeing that FHFA and the Enterprises are complying with HERA and are operating consistently with the public interest.

Plaintiffs, as local governments with the authority to levy assessments with first lien priority on mortgaged property, have an interest in ensuring that the Enterprises and FHFA are properly acting pursuant to their authority under HERA when they take action that interferes with Plaintiffs' assessment authority.  FHFA has wrongly asserted, under the auspices of "safety and soundness" concerns and without following the notice and public comment provisions required when issuing regulations under HERA (12 U.S.C. § 4526(b)), that PACE assessments are loans, not liens; that they do not have the traditional community benefits associated with other taxing incentives; that they are not essential to spur energy conservation; and that they present significant risk.  Plaintiffs have a direct interest in seeing that these unfounded assertions do not wrongly impair the public interest goals they are pursuing under their long-held assessment authority.

Defendants mischaracterize Plaintiffs' interests as "environmental or economic." To the contrary, Plaintiffs have asserted plainly that their interests lie in preventing Defendants from interfering with their long-recognized assessment authority under the auspices of HERA.

Plaintiffs also have an interest in ensuring that the activities of each regulated entity and the manner in which it is operated is consistent with the public interest. 12 U.S.C. § 4513(a)(1)(B)(v).  The purpose behind Plaintiffs' PACE program is to serve its citizens' interest by enabling property owners to voluntarily finance energy efficiency improvements.  Thus, it is in the public interest and within the zone of interests of HERA

that the regulated entities are operated consistently with established law so that Plaintiffs can reach their public interest goals.

**B.      FHFA's Statement is Final Agency Action**

FHFA argues that the Statement is not final agency action because no legal rights, obligations, or consequences flow from its issuance and because violation of the Statement would not subject the Enterprises to enforcement.  However, the Statement's express terms show that the Statement is final action and that the Enterprises would face legal consequences for violating its requirements.

For agency action to be considered final, the action must mark the consummation of the agency's decision making process and the action must be one by which rights or obligations have been determined or from which legal consequences will flow. *Bennett v. Spear*, 520 U.S. 154, 177-178 (1997).

First, FHFA does not suggest that the issuance of the Statement was not the consummation of its decision making process concerning PACE programs, nor could it. The first sentence of the Statement shows that it represents the consummation of a year long process by which FHFA determined "that certain energy retrofit lending programs present significant safety and soundness concerns that must be addressed by Fannie Mae, Freddie Mac and the Federal Home Loan Banks." The Statement's conclusive language underscores its finality.  Moreover, nothing in the Statement indicates that FHFA will revisit the Statement's conclusions or alter its requirements.  As such, the Statement represents the consummation of FHFA's decision making process.

15

`

Next, there is no question that legal consequences and legal obligations flow from FHFA's Statement.  The Statement has legal obligations for both the Enterprises and Plaintiffs.  The Statement provides that the significant safety and soundness concerns PACE programs allegedly present "*must* be addressed by Fannie Mae, Freddie Mac and the Federal Home Loan Banks" and that "FHFA *is directing*" the Enterprises to take the enumerated prudential actions (emphasis added).  FHFA is compelling the regulated entities to act pursuant to the Statement.

The regulated entities understood the Statement to be final and acted on it.  In response to the Statement, on August 31, 2010, Freddie Mac issued Bulletin Number 2010-20, which implements the requirements enumerated in the Statement, including adjusting loan-to-value ratios and debt-to-income ratios for borrowers in PACE jurisdictions and waiving Uniform Security Instrument prohibitions for PACE obligations originating before July 6, 2010. Complaint, ¶ 52.  Freddie Mac treated FHFA's statement as binding final agency action and took definitive steps to implement it.

Further, legal consequences flow from the Statement.  The Enterprises are required to comply with all laws, rules, regulations, or orders issued by FHFA. 12 U.S.C. § 4511(b).  Therefore, the Enterprises had no choice but to comply with the Statement's directives or else face enforcement action for failing to comply with their obligations pursuant to HERA.  And, as noted above, the Statement has had the legal consequence of essentially invalidating Plaintiffs' long standing assessment authority.

**C.     The Statement is a Rule**

16

FHFA argues that it was not required to follow the APA's notice-and-comment procedures when issuing the Statement because the Statement was not a legislative rule. As defined below, the Statement is a legislative rule because it creates new duties for the Enterprises and is not merely reminding them of existing duties. Moreover, FHFA's argument is inconsistent with its prior argument that it was acting as the Enterprises' conservator when it issued the Statement.

12 U.S.C. § 4526(b) requires FHFA to follow the APA's notice-and-comment procedures when issuing regulations. *Id.* The APA's notice and comment procedures require a federal agency to publish proposed rules in the Federal Register so that the public is provided with notice and an opportunity to comment. *Warshauer v. Solis*, 577 F.3d 1330, 1337 (11th Cir. 2009). "However, notice and comment rulemaking is not required when an agency issues an 'interpretive rule.'" *Id.* Courts refer to two categories of rules, interpretive rules and legislative rules. *Id.*

According to the Court in *Warshauer*, "[a]n interpretive rule simply states what the administrative agency thinks the statute means, and only 'reminds affected parties of existing duties.' On the other hand, if by its action the agency intends to create new law, rights or duties, the rule is properly considered to be a legislative rule." *Id.* (quoting *Citizens to Save Spencer County v. EPA*, 600 F.2d 844, 876 n. 153 (D.D.C. 1979)). Also, legislative rules apply prospectively and look to the future. *Interport Pilots Agency, Inc. v. Sammis*, 14 F.3d 122.

The Statement is legislative because it creates new rights and duties for the Enterprises, and it applies prospectively. The Statement creates new rights and duties for

the Enterprises and the Federal Home Loan Banks to address the rapidly developing, and popular, PACE programs across the nation.  As previously discussed, the Statement directs the regulated entities to take certain "prudential actions" including: waiving Uniform Security Instrument prohibitions for mortgages encumbered by PACE assessments before July 6, 2010; adjusting loan-to value ratios and debt-to-income ratios; ensuring loan covenants require approval/consent for PACE assessments; ensuring that mortgages in jurisdictions offering PACE programs meet all applicable federal and state lending regulations and guidance; and requiring the Federal Home Loan Banks to review their collateral policies to assure that pledged collateral is not adversely affected by PACE programs that include first liens.  The Statement creates new duties concerning the way the regulated entities handle government assessments.  That the Statement creates new duties is evidenced by the treatment of mortgages prior to and after the July 2010 "line in the sand."  Prior to the issuance of the Statement, PACE assessments were treated just as other assessments were treated.

Furthermore, despite FHFA's arguments otherwise, the Statement only applies prospectively.  As stated, all of the new requirements concerning PACE assessments apply only to mortgages encumbered after July 6, 2010, because FHFA directed the Enterprises to waive prohibitions against first lien PACE assessments imposed prior to issuance of the Statement.  The Statement only applies prospectively because PACE assessments levied prior to its issuance remained unaffected.

FHFA's reliance on the Supreme Court's decision in *United States v. Gaubert*, 499 U.S. 315 (1991), is misplaced.  FHFA argues that *Gaubert* calls for informality when

supervising financial institutions and, thus, FHFA was not required to go through the formal rule making process prior to issuing the Statement.  However, *Gaubert* does not concern a rule challenge pursuant to the APA, but whether the discretionary function exception to the Federal Tort Claims Act barred Gaubert's claim that the Federal Home Loan Bank Board had been negligent in carrying out its supervisory duties of the day-to-day activities of a savings and loan. *Id.* at 320.  Here, after a year of contemplation, FHFA created new duties and imposed them on the Enterprises.  The Statement involves much more than "day-to-day" supervision of the Enterprises and the informal exercise of general supervisory discretion.

> **D.     Plaintiffs' Have Suffered a Legal Wrong As A**
> **Result of FHFA's Arbitrary and Capricious Statement**

FHFA argues that Plaintiffs' Arbitrary and Capricious claim must fail because Plaintiffs have not identified a relevant statute whose violation forms the legal basis of the Complaint.   FHFA apparently overlooks the fact that Plaintiffs have alleged a violation of the Tenth Amendment. Complaint, ¶¶ 72-80.  Where a plaintiff alleges a violation of its Constitutional rights by a federal agency, it has suffered a "legal wrong" as contemplated by 5 U.S.C. § 702. *Perry v. Delaney*, 74 F. Supp. 2d 824, 834 (C.D. Ill. 1999) (citing *United States v. McAllister*, 969 F. Supp. 1200, 1212 (D. Minn. 1997); *Pennsylvania R. Co. v. Dillon*, 335 F.2d 292, 294 (D.C. Cir. 1964); *Farmer v. Hawk*, 1996 WL 525321 (D.C. Cir. 1996) (unpublished op.)).

Further, and as discussed above, Plaintiffs have alleged that Defendants did not follow the notice and comment provisions required when issuing regulations under HERA (12 U.S.C. § 4526(b)), and that the Statement is arbitrary and capricious because

Defendants' alleged safety and soundness concerns are unsubstantiated, and nothing in HERA or otherwise permits Defendants to "pick and choose which assessment liens have priority over mortgage obligations." Complaint, ¶¶ 60, 69-70.

## IV.   PLAINTIFFS' TENTH AMENDMENT CLAIM IS PROPER

FHFA argues that Plaintiffs' 10th Amendment claim must fail because FHFA has not interfered with Plaintiffs' local tax, assessment, or lien power, and FHFA's actions are protected by the federal government's Commerce Clause Power.

In support of its first argument, FHFA claims that "FHFA's actions *acknowledge and respect* the priority of PACE liens under Florida law...." Motion, p. 26 (emphasis in original). To the contrary, it is the lack of acknowledgment and respect of Plaintiffs' power to levy PACE assessments and create liens that underlies this controversy. FHFA only acknowledges and respects PACE liens if the mortgages they buy do not have them. Again, under the guise of safety and soundness concerns, FHFA has determined, without further explanation, that:

> First liens established by PACE loans are unlike routine tax assessments and pose unusual and difficult risk management challenges for lenders, servicers and mortgage securities investors. The size and duration of PACE loans exceed typical local tax programs and do not have the traditional community benefits associated with taxing initiatives.

Complaint, Ex. E. FHFA also determined that PACE assessment liens "are not essential for successful programs to spur energy conservation." *Id.* Because Defendants effectively control the mortgage market, their mischaracterization of the PACE liens as loans and their unsubstantiated findings that they are unlike typical tax programs, do not

have "traditional" community benefits, and are not necessary to spur energy conservation, have the practical effect of declaring the assessments invalid.

Also, by prohibiting the Enterprises from purchasing mortgages with PACE liens, FHFA is seeking to control or influence the manner in which the Florida legislature and Plaintiffs can assess private property to meet their energy efficiency and greenhouse gas reduction goals. This violates the Tenth Amendment. *See Reno v. Condon*, 528 U.S. 141, 150 (2000).

Finally, FHFA argues that Plaintiffs' Tenth Amendment claim is not viable "because FHFA's actions embody a proper exercise of federal Commerce Clause power." Again, Plaintiffs are not challenging FHFA's ability to regulate the Enterprises or take actions under HERA necessary to ensure their safety and soundness. It is FHFA's invalidation of Plaintiffs' lawful private property assessments under the guise of HERA that violates the Tenth Amendment.

## V.    PLAINTIFFS' UNFAIR TRADE PRACTICES CLAIM IS PROPER

FHFA argues that Plaintiffs' FDUTPA claim is preempted by federal law, that FDUPTA does not apply to an act or practice required or specifically permitted by federal law, and that the Complaint does not allege anything unfair about Defendants' treatment of PACE programs. FHFA's arguments miss the point.

First, FHFA argues that the FDUTPA claim is preempted under the conflict preemption doctrine. FHFA cites to *Butero v. Royal Maccabees Life Ins. Co.* 174 F.3d 1207, 1212 (11th Cir. 1999), for the proposition that a state lawsuit seeking relief that would frustrate federal law must be dismissed. FHFA's reliance on *Butero* is misplaced.

21

*Butero* has nothing to do with the conflict preemption doctrine. *Butero* involves what the court termed "defensive" preemption, which originated in the Employee Retirement Income Security Act's express preemption provision. *Butero* is not applicable, because ERISA is not implicated here and FHFA has not identified an applicable preemption provision.

Moreover, it is unclear how the conflict preemption doctrine applies here since Plaintiffs are not attempting to invalidate HERA or frustrate its purposes, and are not alleging that state law conflicts with HERA. Even if the conflict preemption doctrine applied, Plaintiffs' claims would not be preempted because the purpose of the PACE programs, to promote energy efficiency and the ability of a local government to provide funding through traditional assessments, does not necessarily conflict with the purpose of HERA, which is to ensure the safety and soundness of the Enterprises' operations. *See Pacific Gas & Electric v. State Energy Resources Conservation of Development Commission*, 461 U.S. 190, 216 (1983).

FHFA also argues that Plaintiffs' FDUTPA claim must be dismissed because the Statement was permitted by federal law. As the moving party, FHFA must demonstrate that a specific federal or state law affirmatively authorized it to engage in the conduct alleged in the Complaint. *State of Florida v. Tenet Healthcare Corp.*, 420 F. Supp. 2d 1288, 1310 (S.D. Fla. 2005). FHFA has not shown any provision of HERA that affirmatively authorized it to redefine Plaintiffs' assessments as loans and declare that Plaintiffs' PACE program does not have the traditional community benefits associated with taxing initiatives. Accordingly, Plaintiffs' FDUTPA claim is not subject to

22

dismissal because FHFA has not demonstrated that its specific conduct was affirmatively authorized by federal statute.

Finally, FHFA argues that the FDUTPA claim should be dismissed because Plaintiffs fail to allege anything "unfair" under FDUTPA about the Enterprises' treatment of PACE programs, and that Plaintiffs have not pointed to any Florida law Defendants have violated.  First, the Florida Legislature has not defined an unfair or deceptive act. Therefore courts have declared that a practice which offends established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers may violate FDUTPA. *Id.* (quoting *Betts v. Advance Am.*, 213 F.R.D. 466, 482 (M.D. Fla. 2003)).  Moreover, contrary to FHFA's argument, an act does not have to violate a specific rule or statute to be considered deceptive or unfair. *Id.* (citing *Dep't of Legal Affairs v. Father & Son Moving & Storage, Inc.*, 643 So. 2d 22, 24 (Fla. 4th DCA 1994)). Nonetheless, FHFA's actions prevent Plaintiffs' use of their authority to levy PACE assessments under Section 163.08, Florida Statutes, which determines that PACE assessments constitute a lien of equal dignity to county taxes and assessments.

Here, taking all of the allegations of the Complaint as true, Plaintiffs have sufficiently pleaded that Defendants have engaged in unfair acts by attempting to secure an unlawful lien priority for their mortgages over non-ad valorem assessments, by inaccurately characterizing PACE assessments as government loans, by declaring contrary to the findings of the Florida legislature that Plaintiffs' PACE program does not have the traditional community benefits associated with taxing initiatives, and by effectively halting Plaintiffs' PACE program. Complaint, ¶¶ 81-88.

23

## CONCLUSION

Plaintiffs respectfully request that the Court deny Defendants' Motion to Dismiss Pursuant to Rules 12(b)(1) and 12(b)(6).

Respectfully submitted this 22nd day of February, 2011.


/s/   Edwin A. Steinmeyer _____
Herbert W. A. Thiele
Florida Bar No.: 0261327
LEON COUNTY ATTORNEY'S
OFFICE
301 S. Monroe Street, Suite 202
Tallahassee, Florida 32301
Telephone: (850) 606-2500
Facsimile: (850) 606-2501
thieleh@leoncountysl.gov

Edwin A. Steinmeyer
Florida Bar No.: 0883920
LEWIS, LONGMAN & WALKER, P.A.
P.O. Box 16098
Tallahassee, Florida 32317-6098
Telephone:  (850) 222-5702
Facsimile:  (850) 224-9242
esteinmeyer@llw-law.com

Erin L. Deady
Florida Bar No.:  0367310
LEWIS, LONGMAN & WALKER, P.A.
515 North Flagler Drive, Suite 1500
West Palm Beach, Florida  33401
Telephone:  (561) 640-0820
Facsimile:  (561) 640-8202
edeady@llw-law.com

*Attorneys for Plaintiffs*

CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2011, I electronically filed the foregoing pleading with the Clerk of the Court by using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.


By:  /s/  Edwin A. Steinmeyer
Edwin A. Steinmeyer